1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

KEITH DOUGLAS BEMENT,

NO.  C11-814-TSZ-JPD

9

Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

MICHAEL J. ASTRUE, Commissioner of
Social Security,

12

Defendant.

13

14     Plaintiff Keith Douglas Bement appeals the final decision of the Commissioner of the

15    Social Security Administration ("Commissioner") which denied his applications for Disability

16    Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17    of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18    administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19    the Commissioner's decision be REVERSED and REMANDED for further administrative

20    proceedings.

21                              I.       FACTS AND PROCEDURAL HISTORY

22     At the time of the administrative hearing, plaintiff was a forty-seven year old man with

23    a tenth grade education.  Administrative Record ("AR") at 24.  His past work experience

24

includes employment as an inspector, residential manager, general maintenance worker, and production planner. AR at 24. Plaintiff provided inconsistent information regarding his past work activity and actual earned income, but his earning records document at least some income in 2007 and 2008. AR at 17.

On February 5, 2008, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of December 15, 2006. AR at 133, 137. Plaintiff asserts that he is disabled due to rheumatoid arthritis and affective disorders. AR at 82.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 86, 89, 92, 98. Plaintiff requested a hearing which took place on November 19, 2009. AR at 32-81, 100. On January 21, 2010, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 15-25. Plaintiff's request for review was denied by the Appeals Council, AR at 1, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On May 17, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Bement bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On January 21, 2010, the ALJ issued a decision finding the following:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2.     The claimant has not engaged in substantial gainful activity since December 15, 2006, the alleged onset date.

3.     The claimant has the following severe impairments: rheumatoid arthritis, arthropathy with subacromical spurring, obesity, bipolar disorder, and substance abuse.

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 10 pounds occasionally or frequently, stand and/or walk at least two hours in an eight hour workday, and sit up to six hours in an eight hour workday. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and never climb

ladders, ropes, or scaffolds. The claimant can occasionally reach in all directions, including overhead with the left non-dominant hand, and perform frequent bilateral handling. The claimant cannot work at a production rate pace. He can make simple workplace decisions with few workplace changes.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1962 and was 43 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.[2]

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 15, 2006 through the date of this decision.

AR at 17-25.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err by concluding that the plaintiff could perform the jobs of telephone information clerk and escort vehicle driver in light of the ALJ's findings with respect to plaintiff's ability to reach?

2. Did the ALJ err by finding that plaintiff could perform jobs with a Dictionary of Occupational Titles reasoning level higher than level 1?

Dkt. 16 at 1; Dkt. 18 at 3.

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

A.    <u>The ALJ Erred at Step Five by Relying Upon the VE's Testimony Regarding the Telephone Information Clerk and Escort Vehicle Driver Jobs</u>

1.    *Legal Standards Governing Step Five of the Sequential Evaluation*

At step five, an ALJ must determine whether the claimant's impairments prevent him or her from performing any other substantial gainful activity.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  At this step, the burden is on the Commissioner to show that the claimant may perform other types of work in the national economy, given the claimant's age, education, and work experience.  *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).  The ALJ can meet the burden of showing that there is other work in "significant numbers" in the national economy that the claimant can perform by referring to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, or by eliciting the testimony of a vocational expert ("VE").  *Lounsburry*, 468 F.3d at 1114 (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098-1099, 1101 (9th Cir. 1999)); *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988).  In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations.  *Andrews v. Shalala*, 53 F.3d 1035, 1044 (9th Cir. 1995); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  The hypothetical should be "accurate, detailed and supported by the medical record."  *Tackett*, 180 F.3d at 1101.

Social Security Ruling ("SSR") 00-4p clarifies the standards for identifying and resolving conflicts between occupational evidence provided by a VE and information in the Dictionary of Occupational Titles (4th ed. 1991) ("DOT"), a job information resource

published by the Department of Labor. *See* SSR 00-4p, at *2.[3]  Specifically, the Commissioner uses the DOT and "its companion publication," the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational titles ("SCO"), at both steps four and five, and relies "primarily on" those publications "for information about the requirements of work in the national economy." *Id. See also Massachi v. Astrue,* 486 F.3d 1149, 1153 (9th Cir. 2007) (citing and quoting same).  Thus, while the ALJ is not bound by the information contain in the DOT or SCO, these publications are the primary sources of vocational information at these steps.

Pursuant to SSR 00-4p, before relying on a VE's testimony at step five to support a disability determination, an ALJ must do three things.  First, at the hearing, the ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's] evidence and information provided in the [DOT]." *Id.* at *4.  An ALJ may not properly rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT.  *Massachi v. Astrue,* 486 F.3d 1149, 1152 (9th Cir. 2007) ("[W]e address the question whether, in light of the requirements of [SSR] 00-4p, an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles.  We hold than an ALJ may not.").  If the ALJ does not ask the VE whether his testimony conflicts with the DOT, the reviewing court cannot determine whether substantial evidence supports the

---

[3] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators.  20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).  Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

ALJ's findings. *Id.* at 1153-54 (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006)); *see also Travis v. Astrue,* 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.").

Second, if the VE's testimony appears to conflict with the DOT, the ALJ must "obtain a reasonable explanation for the apparent conflict." SSR 00-4p, at *4. Third, if the VE's testimony is not consistent with the information in the DOT, the ALJ must "explain in the determination or decision how he or she resolved the conflict . . . irrespective of how the conflict was identified." *Id.*

### 2. *The ALJ Erred by Relying Upon Testimony Inconsistent with the DOT*

The parties in this case dispute whether the ALJ erred by relying upon the VE's testimony that plaintiff could perform three representative jobs in light of the ALJ's finding that plaintiff can only occasionally reach in all directions, including overhead with the left non-dominant hand. AR at 21, 73. Specifically, the VE testified that an individual with plaintiff's impairments would be able to perform the following three representative occupations: call out operator (DOT 237.367-014), with 14,000 national jobs and 200 Washington jobs; escort vehicle driver (DOT 919.663-022), with 26,000 national jobs and 500 Washington jobs; and telephone information clerk (DOT 237.367-046), with 7,000 national jobs and 200 Washington jobs. AR at 24-25.

During the hearing, the ALJ interjected during the VE's testimony to ask questions about the fingering and reaching requirements of the telephone-related jobs identified by the VE. The ALJ stated that she wanted to "make sure with the call out operator, the fingering manipulations that I gave, overhead and so forth, is it correct the ear, the ear pieces now can

replace the use of the, you know, having to use the phone frequently? Lift it and the receiver." AR at 75. The VE responded affirmatively. Plaintiff's attorney further questioned the VE about the ability of call out operators to use headsets. The VE responded that "almost all" call out operators use ear phones, and in fact, "[a]lmost any telephone job today, whether it be that one or the telephone information clerk, are using ear phones." AR at 77.

With respect to the escort driver position, the VE explained that that job entails "escorting big boats and houses and huge trucks[.]" AR at 77-78. When plaintiff's attorney asked whether this position was precluded by the ALJ's hypothetical as "driving does involve reaching on an occasional basis since one would be holding the steering wheel," and the ALJ's hypothetical provided that the plaintiff is "occasionally limited in reaching including overhead reaching in all directions with the left non-dominant hand," the VE responded that most escort driver positions "are just passenger cars. There isn't much reaching. I mean you're driving mostly. They're automatic . . . Now, if there's a stick shift in a truck, that might be a different story." AR at 78. When the attorney asked again whether "the act of just holding a steering wheel [was] in effect reaching," the VE responded "not very much. You know yourself, driving your car, you can practically drive it sitting there with your hands and move the wheel. They don't go very fast either." AR at 78. At the conclusion of the VE's testimony, the ALJ asked whether the VE's testimony was consistent with the SCO and the DOT, and the VE responded, "Yes." AR at 80.[4]

Based on the testimony of the VE, the ALJ found plaintiff capable of performing other jobs existing in significant numbers in the national economy at step five. AR at 24-25.

_____

[4] The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO") is an additional job information resource published by the Department of Labor.

Specifically, the ALJ's written decision provided "that the numbers provided by the vocational expert represent significant numbers." AR at 25. The ALJ also stated that "pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]." AR at 25. The ALJ did not discuss the VE's testimony regarding the reaching requirements of the occupations in her written decision.

Plaintiff contends that the ALJ inappropriately relied on the VE's testimony that plaintiff could work as a telephone information clerk and an escort driver because the DOT provides that these two occupations require frequent reaching, rather than occasional reaching, and the ALJ's RFC and first hypothetical question to the VE assumed that plaintiff could only occasionally reach in all directions. Dkt. 16 at 5.[5] Plaintiff asserts that, per SSR 00-4p, the ALJ was required to (1) determine whether there were any conflicts between the DOT and the VE's testimony, (2) obtain a reasonable explanation for any conflict, and (3) address, in his or her written decision, any conflict between the VE's testimony and the DOT. *Id.* at 6. *See also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) ("We make explicit here that an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation."). Plaintiff contends that in this case, the VE erroneously stated that her testimony was consistent with the DOT, and the ALJ relied on this statement and did not explain her resolution of the conflict in her written decision as required by SSR 00-4p. Finally, plaintiff contends that this error was harmful because the remaining representative occupation identified by the ALJ, call out operator, has only 200 Washington jobs and 14,000 national jobs, which are not "significant numbers." Dkt. 16 at 8-9.

---

[5] " 'Occasionally' means occurring from very little up to one-third of the time," whereas " 'frequent' means occurring from one-third to two-thirds of the time." SSR 83-10.

The Commissioner concedes that according to the DOT, the occupations of telephone information clerk and escort vehicle driver require frequent, rather than occasional, reaching. Nevertheless, the Commissioner contends that "the ALJ was not required to rely on the DOT's 'frequent reaching' job classification for these positions. The ALJ must consider the entire record," including the VE's testimony that the telephone information clerk position does not require frequent reaching as it is generally performed with a headset, and the job of escort vehicle driver, as generally performed, does not require reaching beyond occasional as most drivers use automatic vehicles. Dkt. 18 at 4-5. The Commissioner argues that because the VE "was adequately questioned regarding the variance between the DOT classification and her experienced-based opinion . . . [t]he vocational expert's testimony that telephone information clerks used headsets and escort vehicle drivers typically drove automatic cars, was a reasonable explanation of why her more specific opinion varied from the general classification in the DOT." *Id*. at 6 (citing AR at 77-78).

The ALJ erred in this case by asserting in her written decision that the VE's testimony "is consistent with the information contained in the Dictionary of Occupational Titles." AR at 25. The DOT provides that the occupation of telephone information clerk involves reaching "frequently – exists from 1/3 to 2/3 of the time." DOT 237.367-046, 1991 WL 672194. Similarly, the DOT provides that the occupation of escort vehicle driver involves frequent reaching. DOT 919.663-022, 1991 WL 687886. Thus, the VE's testimony that plaintiff could perform these occupations, despite the ALJ's finding that plaintiff was capable of only occasional reaching, was clearly inconsistent with the DOT.

The DOT raises a rebuttable presumption as to job classification. *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir. 1995). As discussed above, SSR 00-4p provides that an ALJ

has an affirmative responsibility to inquire as to whether a VE's testimony is consistent with the DOT and, if there is a conflict, determine whether the VE's explanation for such a conflict is reasonable. *Massachi*, 486 F.3d at 1152-54. As stated by the Ninth Circuit Court of Appeals: "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435-36. *See also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("We merely hold that in order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."). "Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony." *Light v. Social Sec. Admin.*, 119 F.3d 789, 794 (9th Cir. 1997) (internal citations omitted).

In this case, the ALJ could reasonably find the VE's testimony that the telephone information clerk position typically requires only occasional reaching because of the availability of telephone headsets in these types of jobs today constitutes "persuasive evidence to support the deviation" from the DOT. The VE testified that "almost any telephone job today, whether it be [the call out operator] or the telephone information clerk, are using ear phones," and plaintiff does not challenge this testimony. AR at 77. Notably, the VE also testified that the telephone information clerk job is "very similar" to the call out operator job, which the DOT identifies as involving only occasional reaching.

The Court is less persuaded, however, by the VE's testimony that an escort vehicle driver position, as generally performed, involves only occasional reaching. Specifically, the VE testified that this position involves "escorting big boats and houses and huge trucks and . . .

getting these large pieces across our . . . freeways." AR at 77-78. When plaintiff's attorney asked whether the VE would agree that driving inherently involves reaching to grip the steering wheel, the VE expressed confusion about the ALJ's hypothetical. The VE stated, "Well I had overhead was limited . . . I didn't get reaching out of it. Did I miss something?" AR at 78. The ALJ responded "Yes . . . it was reaching in all directions, occasional limited reaching in all directions including overhead with the left non-dominant [hand]." AR at 78. At that point, the VE responded, "Well, most of those are just passenger cars. There isn't much reaching. I mean you're driving mostly. They're automatic . . . Now, if there's a stick shift in a truck, that might be a different story." AR at 78. The VE then denied that holding a steering wheel constitutes "reaching," because "driving your car, you can practically drive it sitting there with your hands and move the wheel. They don't go very fast either." AR at 78. Without more, the VE's testimony does not constitute "persuasive evidence" that the escort vehicle driver position involves occasional, rather than frequent, reaching as provided by the DOT. Thus, the ALJ erred by relying upon the VE's testimony, without more, as a basis for deviating from the DOT with respect to this job.

Finally, even if the ALJ did not err by relying upon the VE's testimony about the reaching requirement for these two occupations to deviate from the DOT, the ALJ erred by failing to acknowledge the conflict and explaining how she resolved it in her written decision. *See* SSR 00-4p ("The adjudicator will explain in the determination or decision how he or she resolved the conflict [between the VE's testimony and the DOT]. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."). Instead, the ALJ's written decision inaccurately provides that the VE's testimony was consistent with the DOT, and includes no further discussion. AR at 25. This was reversible error.

### 3. *The ALJ's Errors at Step Five Were Harmful*

If the ALJ's only errors in this case concerned her evaluation of the telephone information clerk and escort vehicle jobs, the Court would most likely consider the errors harmless. Specifically, 14,000 call out operator jobs, the remaining occupation identified by the VE and relied upon by the ALJ, constitutes a significant number of jobs existing in the national economy for step five purposes.

Federal courts must give deference to the Social Security Administration's interpretation of its own statutes and regulations. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Pagter v. Massanari*, 250 F.3d 1255, 1262 (9th Cir. 2001). Work exists in the national economy when there are "a significant number of jobs (in one or more occupations) having requirements" which the claimant is "able to meet" with the claimant's "physical or mental abilities and vocational qualifications. The phrase "work which exists in the national economy" is defined in the Social Security Act to mean work existing "in significant numbers *either* in the region where" the claimant "lives or in several regions of the country." 42 U.S.C. § 423(d) (2)(A)) (emphasis added). *See also* 20 C.F.R. § 416.960(c)(1) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy *either in the region where you live or in several regions in the country.*") (emphasis added). In light of the Ninth Circuit's holding that as few as 1,266 jobs constituted a "significant number," the 14,000 call out operator jobs constitutes a "significant number" for step five purposes. *See Barker v. Secretary of Health & Human Services*, 882 F.2d 1474, 1478-79 (9th Cir. 1989). *See also Staggs v. Astrue*, 2010 WL 4720341, at *13 (W.D. Wash. May 24, 2010) (100,000 jobs nationally and 125 jobs locally constitutes a "significant number").

As discussed below, however, the ALJ also erred in evaluating the call operator job, which requires a DOT reasoning level of three. *See also* DOT 237.367-014, 1991 WL 672186. Because the ALJ erred in evaluating all three of the jobs identified by the VE during the hearing, this matter must be remanded for a reevaluation of what jobs, if any, plaintiff can perform despite his impairments at step five of the sequential evaluation process.

B.  The ALJ Erred by Finding that Plaintiff Could Perform the Call Out Operator and Telephone Information Clerk Jobs Without Explaining the Deviation from the DOT

On May 27, 2008, non-examining state agency psychologist Kent Reade, Ph.D., opined in relevant part that plaintiff "retains the ability to carry out routine, 1-3 step tasks in a reliable manner. His persistence and ability to maintain a schedule are likewise adequate when performing routine, work-related tasks." AR at 266.[6] With respect to Dr. Reade's opinion, the ALJ found that "[t]he [RFC] conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' . . . Those physicians were non-examining, and therefore, their opinions generally would not deserve as much weight as those examining or treating physicians. However, their opinions do deserve some weight, particular in a case like this in which there exist a number of other reasons to reach similar conclusions (as explained throughout the decision)." AR at 23.

Plaintiff first contends that the ALJ erred in assessing plaintiff's RFC, because "the ALJ did not provide legally sufficient reasons for disagreeing with Dr. Reade's opinion about one-, two-, and three-step tasks." Dkt. 16 at 11 (citing 20 C.F.R. § 404.1527(f)(2)(ii); SSR 96-

---

[6] Dr. Reade's opinion was also "affirmed as written" by Alex Fisher, Ph.D, on August 20, 2008. AR at 624. Specifically, Dr. Fisher opined that "there is inconclusive evidence to determine psych impairment prior to CE. Long hx of substance abuse. Tox screens up to 2007 show positive cocaine use despite denying cocaine use in three years to CE doctor. CE found claimant to have average mood with no impairment of cognitive functioning and ADLs fully intact." AR at 624.

6p).  Because the ALJ's RFC assessment did not include a restriction to one-to-three step tasks, but provides that plaintiff is capable of making "simple workplace decisions with few workplace changes," plaintiff contends that "substantial evidence does not support the ALJ's residual functional capacity assessment or hypothetical question upon which the ALJ relied." *Id.*

Plaintiff further argues that the ALJ's error was harmful because "a restriction to the performance of only one-, two-, and three-step tasks was inconsistent with the performance of the three DOT occupations underlying the ALJ's step-five decision." *Id.* at 12.  Plaintiff asserts that under the DOT category "General Education Development," the three occupations identified by the VE at step five required a reasoning level of two and three, which plaintiff claims is inconsistent with the ALJ's RFC determination.  Specifically, the call out operator and telephone information clerk positions require level three reasoning, and the escort vehicle driver position requires level two reasoning.  Plaintiff also cites unpublished decisions and Eighth Circuit cases for the proposition that reasoning levels of two and three are both beyond the scope of plaintiff's RFC.  *See id.* at 13 (citing *Hulsey v. Asrue*, 622 F.3d 917, 923 (8th Cir. 2010); *Burnsides v. Astrue*, 2010 WL 2730966, at *5 (D. Or. July 9, 2010).  Plaintiff asserts that "only Reasoning Level 1 is consistent with Dr. Reade's restriction . . . to the performance of one-, two-, and three-step tasks," and because the three DOT occupations at issue involved greater reasoning levels, there is no evidence that plaintiff is capable of performing them.  *Id.* at 12.  Thus, plaintiff maintains that the record does not include either a reasonable explanation for this conflict or persuasive evidence supporting the ALJ's departure from the DOT, and therefore substantial evidence does not support the ALJ's finding that he could perform the three jobs identified by the VE.

The Commissioner responds that the plaintiff's contentions "are based on an incorrect underlying premise about how the DOT's educational development component corresponds to the factors considered by the Commissioner at step five." Dkt. 18 at 8. Specifically, the Commissioner contends that the Social Security regulations contain only two categories of abilities in regard to understanding and remembering instructions, either "short and simple" or "detailed and complex." *See id.* By contrast, the DOT includes six gradations for measuring this ability, and "the DOT's educational development component only represents a measure of education, either formal or informal . . . and it is not indicative of the tasks or nature of a particular job." *See id.* at 9. Moreover, the Commissioner points out that the plaintiff has completed the tenth grade without attending special education courses, and has previously worked as an inspector (DOT 806.264-014, reasoning level 4), residential manager (DOT 186.167-018, reasoning level 4), general maintenance (DOT 741.684-026, reasoning level 3), and production planner (DOT 221.162-010, reasoning level 4). *Id.* at 9. The Commissioner argues that plaintiff's education, both formal and informal, demonstrates that he has attained the educational requirements through his past relevant work experience to meet the DOT's educational development reasoning of levels two and three. *See id.* at 9.

As a threshold matter, plaintiff has not demonstrated that the ALJ erred in evaluating the opinions of the non-examining state agency physicians, or in assessing plaintiff's RFC. Specifically, the ALJ's RFC provides that plaintiff "cannot work at a production rate pace. He can make simple workplace decisions with few workplace changes." AR at 21. Dr. Reade opined that plaintiff "retains the ability to carry out routine, 1-3 step tasks in a reliable manner" and "[h]is persistence and ability to maintain a schedule are likewise adequate when performing routine, work-related tasks." AR at 266. Even assuming that the ALJ's RFC

assessment was inconsistent with Dr. Reade's opinion, plaintiff has failed to show that the ALJ erred by affording greater weight to the opinions of examining and treating physicians who did not limit plaintiff to the performance of one-to-three step tasks. In support of his argument, plaintiff simply cites to the regulations providing that the ALJ must evaluate the evidence provided by the state agency medical and psychological consultants and explain the weight afforded to the decision, which the ALJ did in this case. *See* Dkt. 16 at 11 (citing 20 C.F.R. § 404.1527(f)(2)(ii)). *See also* SSR 96-6p (providing that 20 C.F.R. § 404.1527(f) requires the ALJ to "consider and evaluate" the opinions of state agency medical and psychological consultants when making a decision in a particular case). As mentioned above, the ALJ found that Dr. Reade's opinion was entitled to "some weight" as it supported a finding of "not disabled," although it was not entitled to as much weight as the examining and treating physicians. For example, claimant's physicians Suzanne Skinner, M.D. and Andrew Sohn, M.D. did not find the plaintiff limited to one-to-three step tasks, and the ALJ afforded their opinions "great weight" in determining plaintiff's RFC. AR at 22-23. Thus, the ALJ did not err by failing to include a restriction to one-to-three step tasks in the RFC determination.

In addition, contrary to plaintiff's argument, the Court finds that the ALJ's limitation to "simple workplace decisions with few workplace changes" to be consistent with jobs with a DOT reasoning development levels of one or two. However, under the circumstances of this case, the Court is not persuaded that plaintiff's RFC is also consistent with an ability to perform work at the DOT reasoning level three, as alleged by the Commissioner.

Each DOT listing includes a level of reasoning development. *See* DOT, Appendix C (4th ed. 1991), *available at* http://www.oalj.dol.gov/libdot.htm. Reasoning development is one aspect of the "General Educational Development (GED) Scale" used in assessing DOT job

listings, as the GED also addresses levels of mathematical and language development. *Id*.

Level one reasoning development is defined as the ability to: "Apply commonsense

understanding to carry out simple one- or two- step instructions. Deal with standardized

situations with occasional or no variables in or from these situations encountered on the job."

*Id*. Level two reasoning development is defined as the ability to: "Apply commonsense

understanding to carry out detailed but uninvolved written or oral instructions. Deal with

problems involving a few concrete variables in or from standardized situations." *Id*. Level

three reasoning development is defined as the ability to: "Apply commonsense understanding

to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems

involving several concrete variables in or from standardized situations." *Id*.

With respect to the reasoning development levels, the DOT explains that "[t]his is

education of a general nature which does not have a recognized, fairly specific occupational

objective." DOT, App. C. *But see Meissl*, 403 F. Supp. 2d at 983 (equating a job's reasoning

level with "gaug[ing] the minimal ability a worker needs to complete the job's tasks

themselves," and describing reasoning level two jobs as "involve[ing] more detail, as well as a

few more variables, than that with a reasoning level of one."). In addition, reasoning level one

work has been described as "the lowest rung on the development scale" and "as applying to the

most elementary of occupations; only the slightest bit of rote reasoning being required." *Id*. at

984. "For example, the DOT describes the following jobs as requiring only a reasoning level

of one: Counting cows as they come off a truck (job title Checker (motor trans.); pasting labels

on filled whiskey bottles (job title Bottling-Line Attendant (beverage)); and tapping the lid of

cans with a stick (job title Vacuum Tester, Cans)." *Id.*

Plaintiff has cited to two non-binding cases in support of his argument that he can only perform occupations requiring a reasoning level of one. *See* Dkt. 16 at 13 (citing *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010) ("Only occupations with a reasoning development level of one necessarily involve only simple instructions."); *Burnisdes v. Astrue*, 2010 WL 2730966, at *5 (D. Or. July 9, 2010) (holding that a reasoning level 2 job is not consistent with a limitation to simple, routine instructions and tasks)). However, plaintiff fails to acknowledge that other courts, including this one, have found that simple work includes work that requires a reasoning level of at least two. *See e.g., Jenkins v. Astrue*, 2011 WL 304386, *11 ("Plaintiff makes the allegation, rejected in the past by the undersigned, that the limitation of being able to perform more than simple 'one and two step tasks' is inconsistent with the DOT description of the jobs identified by the VE that were described as reasoning levels 3 and 4."); *Lavender v. Astrue*, 2011 WL 3664892, at *12-14 (W.D. Wash. July 28, 2011) (declining to find that the ALJ's limitation to simple, repetitive work was commensurate with a limitation to level 1 reasoning); *Wentz v. Astrue*, 2009 WL 3734104, at *14 (D. Or. 2009) (finding no conflict between the VE's testimony and the DOT where the plaintiff "cites no authority holding that a GED reasoning level of 3 exceeds limitation to simple work"); *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (finding that a limitation to simple, repetitive tasks did not contradict a finding that the plaintiff could do work of reasoning level 2).

In *Meissl v. Barnhart*, the court considered whether the VE's opinion contradicted the DOT's description of the plaintiff's other work as a stuffer given the ALJ's RFC finding limiting the plaintiff to "simple, repetitive tasks." *Meissl*, 403 F. Supp. 2d at 983. Specifically, the court considered the DOT's use of the word "detailed," and found that "a neat, one-to-one parallel" does not exist between the DOT's use of the word "detailed" and the Social Security

regulations' use of the phrase "detailed instructions" in formulating a claimant's residual functional capacity. *Id.* at 984. First, the court noted that the Social Security regulations contain only two categories of abilities in regard to understanding and remembering instructions, either short and simple or detailed and complex, while the DOT contains six graduated levels of reasoning ability, from simple one- or two-step instructions through apprehending the most abstruse classes of concepts. *Id.* The court concluded that confining the Social Security's assessment of "simple" to only reasoning level one, and thereby forcing the "detailed" assessment to encompass the other five reasoning levels, would defeat the purpose of having multiple levels. *Id.* The court also noted that the plaintiff ignored the qualifier the DOT places on the term "detailed" as also being "uninvolved," which called into question any attempt to equate the Social Security regulations' use of that word with the DOT's. *Id.* The court therefore concluded that the DOT level two reasoning definition "specifically caveats that the instructions would be uninvolved—that is, not a high level of reasoning." *Id.* Considering the facts of the case, the court found there was "much to recommend for believing that [the plaintiff's] reasoning level is at two rather than at level one." *Id.*

Similarly, the plaintiff's argument in this case focuses on the ALJ's use of the word "simple" and contrasts it with the DOT's use of the word "detailed." Dkt. 16 at 13. But as in *Meissl*, the Court is not convinced that the answer is as simple as a direct comparison of the words used in the DOT and those used in the ALJ's RFC finding. Rather, in each case this Court must carefully compare plaintiff's RFC with the DOT reasoning scale. As discussed above, the ALJ did not limit plaintiff to only one to three step tasks. Rather, the ALJ found plaintiff limited to "simple workplace decisions with few workplace changes," which does not

conflict with a finding that plaintiff can perform detailed but uninvolved work, i.e., work that requires at least level two reasoning. As a result, the ALJ did not err in finding plaintiff capable of performing jobs that require a DOT reasoning level of two, such as the escort vehicle driver position.[7]

The Court is less convinced, however, that the ALJ's limitation to "simple workplace decisions with few workplace changes" necessarily encompasses jobs with a DOT reasoning level of three, such as the callout operator and telephone information clerk jobs, which require an individual to "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "deal with problems involving several concrete variables in or from standardized situations." DOT, App. C. Many courts have found that level three reasoning is not consistent with a limitation to simple and repetitive tasks. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that a limitation to "simple and routine work" was more consistent with level two reasoning than level three reasoning); *Duran v. Astrue*, 654 F.Supp.2d 1298, 1303-04 (D. Colo. 2009) (holding that the ALJ erred in finding that a claimant limited to jobs involving "simple instructions" could perform level three reasoning jobs); *Estrada v. Barnhart*, 417 F.Supp.2d 1299, 1303-04 (M.D. Fla. 2006) (holding that the ALJ erred in relying on a VE's testimony that a claimant limited to "simple interactions and tasks" could perform level three reasoning jobs).

Here, in addition to plaintiff's physical impairments, the ALJ found that plaintiff suffers from bipolar disorder and substance abuse issues, and has moderate limitations in social and occupational functioning. AR at 18-19. The ALJ noted that plaintiff has reported

---

[7] As discussed above, however, the ALJ erred in relying upon the escort vehicle driver job in this case because its frequent reaching requirements were inconsistent with plaintiff's physical limitations.

experiencing "difficulty sleeping, low energy and motivation, irritability and no patience, feelings of helplessness, and anhedonia. He also noted that he worries constantly. On examination . . . the claimant got off track frequently. He had to be interrupted and redirected consistently." AR at 18-19. Thus, although plaintiff has performed occupations with DOT reasoning levels of three and four in the past, it is not clear whether the ALJ considered plaintiff to still be capable performing jobs with these higher reasoning levels. If the VE's testimony that plaintiff could perform the occupations of call out operator and telephone information clerk (which require level three reasoning) conflicted with the DOT, the Court is not convinced that persuasive evidence in the record supports the ALJ's deviation.

Without more, the ALJ's finding at step five that plaintiff could perform jobs that require level three reasoning is not supported by substantial evidence. Accordingly, this case must be remanded for a reevaluation of what jobs, if any, plaintiff can perform. On remand, the ALJ shall solicit the testimony of a VE, and discuss the DOT reasoning levels requirements of any jobs identified. If there is any conflict between the VE's testimony and the DOT, the ALJ shall discuss this conflict and the ALJ's resolution of it in the written decision.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 28th day of December, 2011.

/s/JAMES P. DONOHUE
JAMES P. DONOHUE
United States Magistrate Judge